**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA and COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiffs, | No. 26 C 3659 |
| v. | Honorable Martha M. Pacold |
| STATE OF ILLINOIS et al., | |
| Defendants. | |

**<u>DEFENDANTS' MOTION TO STAY</u>**

"All litigants and lawyers must avoid multiplying litigation." *Ewing v. Carrier*, 35 F.4th 592, 594 (7th Cir. 2022). Applying the Seventh Circuit's instruction here leads to a straightforward conclusion. This case presents the same novel questions of law that the Court currently has under advisement in *Coinbase Financial Markets, Inc. v. Raoul*, No. 25 C 15406. So further proceedings in this case should be stayed pending the Court's ruling on the fully briefed and argued preliminary injunction motion in the closely related *Coinbase* case.

**BACKGROUND**

Prediction markets like Kalshi and Polymarket offer Illinois consumers the opportunity to purchase positions on "event contracts," which generally ask a question that can be answered either "yes" or "no." For example, an event contract might ask: "Will the San Antonio Spurs win the 2026 NBA Finals?"[1] The price of purchasing the "yes" position will fluctuate between a cent and a dollar depending on the market's current assessment of the probability that the outcome will occur. A person who purchases the "yes" position receives a dollar if the Spurs win the 2026

---

[1] *See* https://kalshi.com/markets/kxnba/pro-basketball-champion/kxnba-26.

NBA Finals (and receives nothing if the New York Knicks win). Prediction markets also offer event contracts concerning the outcomes of elections ("Will Xavier Becerra be elected to the governorship of California pursuant to the election in 2026?")[2] and awards shows ("Will *The Odyssey* win Best Picture at the 99th Academy Awards expected to be held in March 2027?").[3]

Are these event contracts a form of gambling that Illinois may regulate under the states' long-recognized authority in our federal system? Or are they a type of financial instrument that, in the aftermath of the 2008 financial crisis, Congress determined to subject to federal regulation under the Commodity Exchange Act? This threshold question is presented both here and in the *Coinbase* case. If event contracts like the ones described above are *not* subject to federal regulation, then that ends both cases in the state's favor. If they *are* subject to federal regulation, however, then another common question arises: May states like Illinois regulate these event contracts alongside the federal government? Or does federal law preempt state law as applied to event contracts concerning the outcomes of sporting events, elections, and awards shows?

As the Court knows, these are novel questions of law. Both are squarely presented by the preliminary injunction motion awaiting the Court's decision in the *Coinbase* case. Over the course of eight weeks stretching from December 2025 to February 2026, the *Coinbase* parties and an amicus presented the Court with comprehensive briefs attacking these questions from all angles. *Coinbase* ECFs 27, 37, 47, & 48. Toward the end of February 2026, the Court held a hearing on the motion that lasted nearly three hours. *Coinbase* ECF 51. Among the materials submitted to the Court for its consideration in resolving the preliminary injunction motion is an amicus brief that the Commodity Futures Trading Commission ("CFTC") filed in a related Ninth

---

[2] *See* https://kalshi.com/markets/kxgovca/california-governors-race/kxgovca-26.

[3] *See* https://kalshi.com/markets/kxoscarpic/oscar-for-best-picture/kxoscarpic-27.

Circuit appeal; the arguments that the CFTC made to the Ninth Circuit as an amicus mirror the arguments that it makes in this case as a party. *Compare Coinbase* ECF 49-1 *with United States* ECF 1. The Court also has been kept up to date on the commission's regulatory actions in this area. *Coinbase* ECFs 56-1 & 56-2.

Of course, the Court is not the only tribunal considering whether event contracts are swaps under the Commodity Exchange Act and, if so, whether Congress thereby intended to preempt state gambling laws. *See Coinbase* ECFs 52, 55, 59, & 61 (granting motions for leave to cite supplemental authority). The question whether prediction markets are subject to state or federal regulation (or both) began percolating in courtrooms across the country around fourteen months ago, and the results so far are mixed. *Compare KalshiEX LLC v. Schuler*, No. 2:25-cv-1165, 2026 WL 657004 (S.D. Ohio Mar. 9, 2026), *appeal filed*, No. 26-3196 (6th Cir.); *KalshiEX LLC v. Hendrick*, 817 F. Supp. 3d 1014 (D. Nev. 2025), *appeal filed*, No. 25-7516 (9th Cir.); *North American Derivatives Exchange, Inc. v. Nevada*, 815 F. Supp. 3d 1169 (D. Nev. 2025), *appeal filed*, No. 25-7187 (9th Cir.); *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025), *appeal filed*, No. 25-1892 (4th Cir.); *Commonwealth v. KalshiEX LLC*, No. 2584CV02525 (Mass. Super. Ct. Jan. 20, 2026), *appeal filed*, No. SJC-13906 (Mass.) (finding in favor of states), *with KalshiEX LLC v. Flaherty*, 172 F.4th 220 (3d Cir. 2026); *KalshiEX LLC v. Johnson*, No. CV-26-01715-PHX-MTL, 2026 WL 1223373 (D. Ariz. May 5, 2026), *appeal filed*, No. 26-2978 (9th Cir.); *KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026), *appeal filed*, No. 26-5235 (6th Cir.) (finding in favor of prediction markets).

As of today, the Third Circuit is the only appellate court to weigh in. But appeals are pending before the Fourth, Sixth, and Ninth circuits, as well as Massachusetts's highest court. And the same questions of law are pending in district courts in the First, Second, Seventh,

Eighth, and Tenth circuits. *See, e.g.*, *Coinbase Financial Markets, Inc. v. Tong*, No. 3:25-cv-02121-VDO (D. Conn.); *KalshiEX LLC v. Bird*, No. 4:26-cv-00109-SHL-HCA (S.D. Iowa); *United States v. Minnesota*, No. 0:26-cv-02661-LMP-DTS (D. Minn.); *KalshiEX LLC v. Williams*, No. 1:25-cv-08846-AT (S.D.N.Y.); *KalshiEX LLC v. Furcolo*, No. 1:26-cv-00327 (D.R.I.); *KalshiEX LLC v. Cox*, No. 2:26-cv-00151-RJS-CMR (D. Utah); *United States v. Wisconsin*, No. 2:26-cv-00749-WCG (E.D. Wis.).

Because of the uncertainty surrounding these important questions of law, out of respect for the Court's constitutional role in resolving them, and with an eye toward "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, Illinois officials are not enforcing state laws against prediction markets or related entities purporting to operate under CFTC regulation while the Court is considering the preliminary injunction motion in the *Coinbase* case. *See, e.g.*, *Coinbase* ECF 30 at 285, ¶ 4.

## LEGAL STANDARD

"The judiciary has an interest, independent of litigants' goals, in avoiding messy, duplicative litigation." *Ewing*, 35 F.4th at 594. A stay of parallel proceedings often helps to effectuate this interest. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Radio Corporation of America v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954). "In determining whether to grant a motion to stay, courts consider (1) whether the stay will simplify the issues and streamline the trial; (2) whether the stay will reduce the burden of litigation on the Court and the parties; and (3) whether the stay will unduly prejudice or tactically disadvantage the non-moving party." *Bernstein v. Coinbase Global, Inc.*, No. 25 C 5313, 2025 WL 2418409, at *2 (N.D. Ill. Aug. 21, 2025). "'A stay pending the outcome

4

of litigation in another court . . . involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery.'" *Texas Independent Producers & Royalty Owners Association v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005).

## ARGUMENT

The Court should stay further proceedings in this case pending its ruling on the fully briefed and argued preliminary injunction motion in the closely related *Coinbase* case.[4] Both cases require the Court to determine whether a sports-related event contract is a "swap" under the Commodity Exchange Act because it provides a payment "dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency." 7 U.S.C. § 1a(47)(A)(ii). And, if a sports-related event contract is a swap, both cases also require the Court to determine whether the provision in the Commodity Exchange Act giving the CFTC "exclusive jurisdiction" over "transactions involving swaps" traded on regulated markets either expressly or impliedly preempts otherwise applicable Illinois law. *Id.* § 2(a)(1)(A).

These questions of law are squarely presented to the Court in the *Coinbase* preliminary injunction motion. *E.g.*, *Coinbase* ECF 37 at 315-25 (no likelihood of success on the merits because sports-related event contracts "are not 'swaps' under the Commodity Exchange Act"); *id.* at 325-34 (no likelihood of success on the merits because "Congress did not intend to displace the states' gambling laws when it gave the CFTC 'exclusive jurisdiction' over swaps"). And the Court's decision on the *Coinbase* preliminary injunction motion is likely to turn on its resolution of these questions. The plaintiff's likelihood of success on the merits is among the "most important considerations" in determining whether to issue a preliminary injunction. *Bevis v.*

---

[4] Defendants' motion to stay "tolls" their upcoming "deadline to answer [the] complaint." *Spark Energy, LLC v. Raoul*, No. 1:25-cv-01190-JEH-RLH, 2025 WL 3012278, at *2 (C.D. Ill. Oct. 28, 2025); *see Vaughan v. Biomat USA, Inc.*, No. 1:20 CV 04241, 2020 WL 6262359, at *2 (N.D. Ill. Oct. 23, 2020).

*Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). Indeed, it "is often decisive." *Braam v. Carr*, 37 F.4th 1269, 1272 (7th Cir. 2022). And the Supreme Court regularly decides important merits questions in the context of determining whether a plaintiff has satisfied this element of the preliminary injunction standard. *E.g.*, *Chiles v. Salazar*, 146 S. Ct. 1010 (2026); *Mahmoud v. Taylor*, 606 U.S. 522 (2025); *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025).

If the Court addresses these questions of law in ruling on the *Coinbase* preliminary injunction motion, its holdings will provide helpful guidance to the parties in this case. Those holdings might even dispose of this case on the merits. Suppose, for example, that the Court denies the preliminary injunction motion because it determines that an event contract asking whether the San Antonio Spurs will win the 2026 NBA Finals is not a "swap" within the meaning of the Commodity Exchange Act. It necessarily would follow from the Court's holding that this case must be dismissed for failure to state a claim.[5] If sports-related event contracts are not swaps, then the CFTC has *no* authority to regulate them—much less the sort of "exclusive jurisdiction" that it contends has the effect of displacing state gambling laws.[6]

The worthy goals of conserving judicial resources and avoiding inconsistent decisions explain why "[d]istrict courts frequently exercise their discretion to impose a stay when 'a higher court in a separate case will decide issues of law that are significant to the case sought to be stayed.'" *Spark Energy*, 2025 WL 3012278, at *2; *see, e.g.*, *Sledz v. Platt*, No. 22 C 952, 2024

---

[5] Some states argue that the federal government lacks standing to pursue identical claims. *E.g.*, *Johnson*, 2026 WL 1223373, at *3; Motion to Dismiss at 7-12, *United States v. Connecticut*, No. 3:26-cv-00498-VDO (D. Conn. June 3, 2026), ECF 80; Motion to Dismiss at 4-16, *United States v. Wisconsin*, No. 2:26-cv-00749-WCG (E.D. Wis. May 29, 2026), ECF 27. Defendants do not presently intend to do so. But, because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists," *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010), defendants want the Court to know that the argument is being made elsewhere, *see BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002).

[6] The CFTC also challenges state regulation of election-related event contracts. *United States* ECF 1 at 3, ¶ 7. But the Court's reasoning as to sports-related event contracts is likely to be relevant to this question.

WL 6968809, at *2 (N.D. Ill. Dec. 6, 2024) (stay "reduce[s] the burden on the parties and the Court by preventing additional litigation when a controlling issue of this suit is before the Seventh Circuit"). And the logic underlying these decisions applies equally when a court is asked to impose a stay pending *its own* decision in a related case. It is inconceivable that the Court would hold in the *Coinbase* case that sports-related event contracts *are* swaps but hold in this case that they are *not*—or hold in the *Coinbase* case that the Commodity Exchange Act *preempts* state gambling laws but hold in this case that that federal law and state law *coexist* in harmony.

The Court has already received lengthy briefs on these questions of law from the parties in the *Coinbase* case. *Coinbase* ECFs 27, 37, 47, & 48. So judicial economy would not be served by the Court's receiving duplicative briefing on these same questions of law from the parties in this case. *See Chicago Title & Trust Co. v. Verona Sports Inc.*, 11 F.3d 678, 679 (7th Cir. 1993) (statement of Ripple, J.) ("expenditure of judicial energy and resources" "has a very real dollars and cents cost to the people of the United States and a very real delay cost to other litigants who have a right to the thorough and expeditious adjudication of their disputes"). For one thing, defendants in both cases largely overlap and are all represented by the Illinois Attorney General. Any brief that the defendants might submit to the Court in this case would certainly call to mind the brief that defendants submitted to the Court just a few months ago in the *Coinbase* case.

As for the CFTC, it is both a party to this case and the agency that Congress tasked with regulating swaps under the Commodity Exchange Act. 7 U.S.C. § 2(a)(1)(A). But this makes no difference to the stay analysis because, here too, the Court already "ha[s] the benefit of [the CFTC's] perspectives" on these questions of law as it considers the *Coinbase* preliminary injunction motion. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024). After all, the Court granted the *Coinbase* plaintiff's motion for leave to cite an amicus brief that the CFTC

7

filed earlier this year in a pending Ninth Circuit appeal. *Coinbase* ECFs 49-1 & 52; *see Loper Bright*, 603 U.S. at 402 (benefits of agency's perspectives are available to courts whether the agency is one of the "parties" or an "*amici*"). Naturally enough, the CFTC's views expressed in that amicus brief are materially identical to the complaint it filed in this case a few weeks later. ECF 1. Of course, the Court may take those views into account in deciding the *Coinbase* preliminary injunction motion. But the CFTC's interpretation of the Commodity Exchange Act does not "'control'" and is entitled to no special weight beyond its "'power to persuade.'" *Loper Bright*, 603 U.S. at 402. So the agency's status as a party to this case does not override the usual rule that "litigants and lawyers must avoid multiplying litigation." *Ewing*, 35 F.4th at 594.

Nor are Illinois officials engaged in any "real world" activity that could justify plowing full steam ahead with this case while the *Coinbase* preliminary injunction motion remains pending. To the contrary, Illinois officials have acted responsibly—with full awareness of the legal uncertainty surrounding the regulation of prediction markets and with great respect for the Court's constitutional role in resolving these important questions of law. *See, e.g.*, *Loper Bright*, 603 U.S. at 385. In the *Coinbase* case, for example, "Defendants agree[d] to refrain from taking enforcement action against Plaintiff or any of its affiliates or employees during the pendency of Plaintiff's motion for preliminary injunction before this Court." *Coinbase* ECF 30 at 285, ¶ 4.

On top of all these good reasons to stay this case, add the burgeoning legal landscape. Dozens of judges are considering, or have ruled on, the same questions of law presented here and in the *Coinbase* case. *See supra* at 3-4. With the assistance of the parties' briefing and argument, and the thoughtful analyses offered by other judges grappling with the same issues, the Court has before it everything necessary to make a valuable contribution to this legal debate when it resolves the *Coinbase* preliminary injunction motion. But "there is only so much benefit to be

derived from chewing the bone of an issue indefinitely." *National Association of Immigration Judges v. Owen*, 160 F.4th 100, 102 (4th Cir. 2025) (Wilkinson, J., concurring). Repeating the arguments yet another time in this case won't help to advance these deliberations.

As this discussion establishes, the wiser course is to stay this case pending the Court's ruling on the *Coinbase* preliminary injunction motion. This conclusion is confirmed by the three factors courts consider when asked to stay a case. *See Bernstein*, 2025 WL 2418409, at *2. Staying this case will simplify the issues and streamline proceedings because the Court's decision on the *Coinbase* preliminary injunction motion will at least provide guidance and may even dispose of this case. For the same reason, staying this case will reduce the burden of litigation on the Court and the parties. And, because the Court is already considering the CFTC's views on the questions of law presented in the *Coinbase* preliminary injunction motion, staying this case will not unduly prejudice or tactically disadvantage the nonmoving party.

## CONCLUSION

This case presents the same novel questions of law that the Court has under advisement in connection with the *Coinbase* preliminary injunction motion. When the Court resolves that motion, its holding will provide guidance and may help to dispose of this case. The Court should therefore stay this case pending its ruling on the *Coinbase* preliminary injunction motion.

Dated: June 9, 2026                                  Respectfully submitted,

                                                     /s/ Darren Kinkead
                                                     Darren Kinkead
                                                     Office of the Illinois Attorney General
                                                     115 South LaSalle Street
                                                     Chicago, IL 60603
                                                     (773) 590-6967
                                                     Darren.Kinkead@ilag.gov

9