**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COINBASE FINANCIAL MARKETS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KWAME RAOUL, in his official capacity as Attorney General of Illinois, et al.,<br><br>Defendants. | No. 25 C 15406<br><br>Honorable Martha M. Pacold |
| THE UNITED STATES OF AMERICA and COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiffs,<br><br>COALITION FOR FAIR MARKETS and NORTH AMERICAN DERIVATIVES EXCHANGE, INC., d/b/a OG,<br><br>Intervenors,<br><br>v.<br><br>STATE OF ILLINOIS et al.,<br><br>Defendants. | No. 26 C 3659<br><br>Honorable Martha M. Pacold |
| KALSHIEX LLC,<br><br>Plaintiff,<br><br>v.<br><br>KWAME RAOUL, in his official capacity as Attorney General of Illinois, et al.,<br><br>Defendants. | No. 26 C 7363<br><br>Honorable Martha M. Pacold |

# **JOINT STATUS REPORT**

Plaintiffs Coinbase Financial Markets, Inc. ("Coinbase"); United States of America and Commodity Futures Trading Commission (collectively "CFTC"); and KalshiEX LLC ("Kalshi"); Defendants State of Illinois, JB Pritzker, Kwame Raoul, Dionne Hayden, Sean Brannon, Stephen Ferrara, Caleb Melamed, and Marcus Fruchter (collectively "Defendants"); and Intervenors Coalition for Fair Markets ("Coalition") and North American Derivatives Exchange, Inc., d/b/a OG ("OG") respectfully submit this joint status report pursuant to the Court's direction that the "parties shall file a joint status report suggesting a proposed schedule for supplemental briefing on the issue of fees by October 8, 2026." *Coinbase* ECF 93; *CFTC* ECF 98; *Kalshi* ECF 59.

The parties agree that supplemental briefing on this issue is not necessary at this time because the taxes imposed by the Sports Wagering Act only apply to activities conducted by <u>licensees</u>, and the Court's anticipated preliminary injunction will prevent Illinois officials from applying the Sports Wagering Act's licensing requirements to CFTC-registered entities like Coinbase, Kalshi, OG, and the designated contract markets represented by the Coalition consistent with the Court's already entered ruling.

Illinois law provides: "No person may engage in any activity in connection with sports wagering in [Illinois] unless all necessary licenses have been obtained in accordance with [the Sports Wagering] Act and the rules of the [Illinois Gaming] Board." 230 ILCS 45/25-20(a); *see id.* 25-10 (defining "sports wagering" to include "accepting wagers on sports events or portions of sports events, or on the individual performance statistics of athletes in a sports event or combination of sports events, by any system or method of wagering," including "exchange wagering"); *id.* (defining "exchange wager" to include "an agreement, contract, transaction, or

swap that is offered, traded, or executed on a prediction market or exchange tied to a sporting contest or sporting event").

An entity that obtains a license under the Sports Wagering Act must comply with other provisions of the statute, including the various taxes that the Sports Wagering Act imposes on licensees. 230 ILCS 45/25-90(a-5) ("for the privilege of holding a license to operate sports wagering under this Act, the State shall impose and collect 2% of the adjusted gross receipts from sports wagers that are placed within a home rule county with a population of over 3,000,000 inhabitants") (emphasis added); *id.* 25-90(d) ("for the privilege of holding a license to operate sports wagering under this Act, this State shall impose a privilege tax on the master sports licensee's adjusted gross sports wagering receipts from sports wagering over the Internet or through a mobile application") (emphasis added); *id.* 25-90(d-5) ("for the privilege of holding a license to operate sports wagering under this Act, this State shall impose a privilege tax on the master sports licensee's adjusted gross sports wagering receipts from sports wagering from other than over the Internet or through a mobile application") (emphasis added); *id.* 25-90(d-7) ("for the privilege of holding a license to operate sports wagering under this Act, this State shall impose a wager tax on each master sports licensee for each individual wager placed with the master sports licensee for sports wagering over the Internet or through a mobile application") (emphasis added); *id.* 25-90(d-20) ("any wagers offered under this Act shall be subject to incur a transaction tax equal to [ ] 1.75% of each exchange wager" for "the first five million exchange wagers conducted by a licensee during a fiscal year" and equal "to 3.5% of each exchange wager" for exchange wagers beyond the first five million) (emphasis added).

The Court has determined that the Commodity Exchange Act preempts application of the Sports Wagering Act's licensing requirement to activity that constitutes "transactions involving

swaps" that are "traded or executed on a [designated] contract market" under federal law. *Coinbase* ECF 94 at 1538-40; *CFTC* ECF 99 at 947-49; *Kalshi* ECF 60 at 665-67. The Court therefore intends to preliminarily enjoin Illinois officials from enforcing the Sports Wagering Act's licensing requirement under these circumstances. *Coinbase* ECF 93; *CFTC* ECF 98; *Kalshi* ECF 59. The injunction necessarily will restrain Illinois officials from enforcing the Sports Wagering Act's tax provisions against CFTC-registered exchanges and intermediaries consistent with the Court's already entered ruling because the injunction will prevent from occurring the condition precedent necessary for the Sports Wagering Act to impose taxes: that the at-issue entity is licensed under the statute and is offering "sports wagers" under that authority. *CFTC* ECF 67 at 459 n.37 (explaining that 230 ILCS 45/25-90(d-20) "simply increase[s] taxes on certain licensees under the Sports Wagering Act"); *Kalshi* ECF 39 at 272 n.37 (same).

As the Court observed, there is a separate question whether the Commodity Exchange Act would preempt a hypothetical Illinois law that independently imposed a tax on federally regulated entities apart from any effort to regulate their conduct. *Coinbase* ECF 94 at 1540-42; *CFTC* ECF 99 at 949-51; *Kalshi* ECF 60 at 667-69. But this is not what the Sports Wagering Act does; it requires entities engaging in "sports wagering" to pay taxes only if they are licensed and their conduct is regulated under state law. The Court's preemption analysis concerning the Sports Wagering Act's licensing requirement is therefore sufficient to resolve the parties' dispute as to the statute's tax requirements.

Dated: October 8, 2026

Respectfully submitted,

/s/ Yaira Dubin (with permission)
Yaira Dubin
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
YDubin@gibsondunn.com
*Counsel for Coinbase*

/s/ Darren Kinkead
Darren Kinkead
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
(773) 590-6967
Darren.Kinkead@ilag.gov
*Counsel for Defendants*

/s/ David W. Rubin (with permission)
David W. Rubin
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street NW
Washington, DC 20581
(202) 418-5734
DRubin@CFTC.gov
*Counsel for the CFTC*

/s/ Matthew S. Owen (with permission)
Matthew S. Owen
Gibson, Dunn & Crutcher LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
MOwen@gibsondunn.com
*Counsel for the Coalition*

/s/ Jed Schwartz (with permission)
Jed Schwartz
Milbank LLP
55 Hudson Yards
New York, NY 10001
(212) 530-5283
JSchwartz@milbank.com
*Counsel for Kalshi*

/s/ Robert A. Fumerton (with permission)
Robert A. Fumerton
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
Robert.Fumerton@skadden.com
*Counsel for OG*